PEOPLE ex rel. McKAY v. YORK et al.

(Supreme Court, Appellate Division, First Department. December 9, 1898.)

1. POLICE FORCE—MEMBERS—DOORMAN.
Laws 1896, c. 960, entitled "An act to provide for the reorganization, regulation and maintenance of a police department for the county of Richmond," after giving the police commissioners power to appoint door-

men for each station house, provides (section 7) that "the salaries of the officers and members of said department of police shall not exceed" certain rates per annum, among which are enumerated doormen; and, further, that "such salaries shall be subject to the deductions hereinafter directed to be made for the benefit of the pension fund." Section 13 provides for the punishment of a member of the force for any criminal offense or neglect of duty in a certain manner, "or if he be an officer other than dooman or patrolman," by reducing his grade. *Held,* not to show an intention to treat doormen as members of the police force, since section 5 expressly states that the force shall consist of a "captain, roundsmen, and patrolmen," and that the police commissioners may appoint doormen to hold office during the pleasure of the commissioners.

2. SAME.

The action of the police commissioners, under the Greater New York charter, in permitting the relator to perform the duties of doorman in the police force for two months after the charter took effect, does not authorize the presumption of a new appointment, since no such appointment is authorized under the charter.

Appeal from special term, New York county.

Application by the people, on the relation of Patrick McKay, against Bernard J. York and others, · composing the board of police of the police department of New York City, for a writ of mandamus to compel the reinstatement of the relator to the position of doorman in said police department. From an order denying the writ, relator appeals. Affirmed.

The opinion at special term is as follows (BEEKMAN, J.):

On July 1, 1893, the petitioner was appointed to the position of doorman by the then commissioners of police for the county of Richmond, to serve as such during the pleasure of the commissioners, at a salary of $60 a month. At that time the constitution of the police force and the powers and duties of the commissioners for that county were determined by chapter 497 of the Laws of 1870, entitled "An act to establish a police force in the county of Richmond," as amended by chapter 335 of the Laws of 1893. Under section 3, as so amended, said commissioners were authorized to appoint a police force "to do police service in said county of Richmond, not exceeding, including officers, seventy-five in number." By section 7 of the act the board was authorized to make rules and regulations for the government of the police force, and, pursuant to that authority, or acting on the assumption of a general authority to make provision for the proper administration of their duties, the commissioners, in 1889, adopted, among others, a rule which, after declaring that the police force should consist of the full complement authorized by the statute, further provided that, "in addition to the above, there shall be attached to the force, but not members thereof, one secretary of the board and one doorman for each station. The secretary of the board and doorman, not being members of the force, are removable at the pleasure of the board." It will thus be seen that whatever may have been the source of authority for his appointment, the petitioner was not appointed to, and did not fill, any position in the police force as constituted by the legislature. Indeed, particular pains were taken to place that fact beyond the possibility of question. It was not until chapter 960 of the Laws of 1896, entitled "An act to provide for the reorganization, regulation and maintenance of a police department for the county of Richmond," became a law that the office or position of doorman received direct legislative recognition; but it was a recognition which was strictly in harmony with the character and limitations which had been imposed upon it by the commissioners. By section 5 of the act it was declared that the "police force" should consist of a captain, sergeants, roundsmen, and patrolmen, and that the total force should not exceed sixty. Having thus completely defined the constituent elements of that force, it turns to another function of the board, and provides that "said

police commissioners are also empowered to appoint a chief clerk and a police surgeon, and also doormen, not exceeding two for each station house. The persons so appointed shall hold their respective offices during the pleasure of the commissioners, and said commissioners may also retain counsel when necessary." A decided purpose is thus disclosed providing for an administrative class of employés, which included doormen, who should be quite distinct from the police force, so called, having other functions to perform, and whose tenure of office should be limited to the pleasure of the commissioners. The position and tenure of the petitioner were thus clearly defined, and continued in conformity with the terms of his original appointment. In 1897 an act was passed entitled "An act for the reorganization, regulation and maintenance of a police department for the county of Richmond, and repealing certain acts" known as "Chapter 108 of the Laws of 1897." Section 5 of that act contains substantially the same provisions and observes the same distinctions between the "police force" and the other class of employés as are found in the act of 1896, again declaring that the latter shall hold their respective offices "during the pleasure of the commissioners." This, then, was the condition of the law on January 1, 1898, when the Greater New York charter took effect, under which a consolidation of the police forces of New York, Richmond county, and the other territory forming a part of the new city took place under the sole management and control of a new board, constituted for the purpose. The petitioner was discharged by this board shortly afterwards, without having been accorded a hearing and a trial on charges duly preferred against him. His contention here is that this was in violation of section 300 of the new charter, which requires such a procedure before a member of the police force can be disciplined or removed, and he claims the benefit of the provision on the ground that he became such a member by virtue of the charter provisions under which the consolidation of police jurisdictions above referred to took place. I am quite unable to discover any support for this claim. By section 273 of the charter (chapter 378, Laws 1897) the board of commissioners of police for the county of Richmond, and other similar bodies for other portions of the territory affected by the consolidation, were abolished, and "the respective police forces and departments" theretofore existing were consolidated into "one department and force." Section 276 declares that the police force thus constituted shall consist of a chief of police and a number of other officers and functionaries, whose grades are enumerated, including doormen. Two methods are elsewhere provided for filling the places thus created and completing the new organization: one by appointment by the police force, and the other by a transfer to the new force, through legislative action of the police forces of the various municipalities absorbed in the creation of the new city. This transfer was provided for under sections 277–280, which enumerated the persons intended to be so transferred with a precision and completeness that leaves no room for construction. Doubtless this was advisedly done for the purpose of preventing just such controversies as the petitioner has attempted to set up in this proceeding. Section 280 is the only one to which it is material that I should refer. It declares that "the captain and each sergeant, roundsman and patrolman of the police force of the county of Richmond, or of any town or village in that part of the county of Queens included in the city of New York, as hereby constituted, shall be members of the police force specified in section two hundred and seventy-six of this act." The omission of doormen from this specification will be immediately noticed,—an omission which is absolutely fatal to the petitioner's claim; not made inadvertently, but deliberately, and in conformity with previous legislation on the subject and with the very terms of his original appointment. In short, the plain legislative intent was that only those who were members of the police force of their locality should become members of the new force. It is true that the petitioner seems to have continued in the employment of the new board after the charter had taken effect; but, if there was authority in law for this, it must be found in section 282, which continues in the service of the police board of the new city, but only during the pleasure of the commissioners, all employés of the former boards other than members of the police forces which had been under their control. The petitioner, then, not having

been a member of the police force, was not entitled to a trial before removal, but was legally discharged by the commissioners in the exercise of an unquestionable right so to do. His motion for a mandamus to compel his reinstatement must therefore be denied. Motion denied, with costs.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, INGRAHAM, and McLAUGHLIN, JJ.

.L. J. Grant, for appellant.
Theodore Connoly, for respondents.

VAN BRUNT, P. J. We might very well base our affirmance of the order appealed from upon the well-considered opinion of Mr. Justice BEEKMAN in the court below, were it not that he makes no reference to two sections of chapter 960 of the Laws of 1896, upon which the appellant now bases his claim that there was error in the court below. It is contended by the appellant that by sections 7 and 13 of said law it clearly expresses that the purpose which the legislature sought to accomplish was to make doormen members of the police force of Richmond county. By section 7, among other things, it is provided that the salaries of the officers and members of said department of police shall not exceed certain rates per annum—among which are enumerated doormen; and, further, that said salaries shall be subject to the deduction therein directed to be made for the benefit of the pension fund. And by section 13 it was further provided that the commissioners of police should have power, in their discretion, on conviction of a member of the force for any criminal offense or neglect of duty, to punish the offending party by reprimand, forfeiture, and withholding pay for a specified time, or suspension or dismissal from the force, or, if he be an officer other than doorman or patrolman, by reducing him to any grade below that in which he was acting. In view of the repeated provisions of the statute to which Mr. Justice BEEKMAN has referred, showing that it was not the intention of the legislature to treat doormen as members of the police force, this incidental mention of doormen in the fixing of salaries to be paid to the police cannot possibly be held to make them members of the force. And, even if it did, section 280 of the new charter states what members of the police force of the county of Richmond should be members of the police force of the new city. It says that the captain and each sergeant, roundsman, and patrolman of the police force of the county of Richmond shall be members of the police force specified in section 276 of the act. How a doorman can become a member of the police force of the new city under this section it is difficult to imagine. The intention of the legislature is explicit and unmistakable.

It is further claimed upon the part of the appellant that the rule is well settled that an appointment can be made by acquiescence as well as by direct appointment; and from the circumstance that the appellant continued in office for nearly two months after January 1, 1898, and was permitted to perform the duties of doorman in the New York police force during that time, it is claimed that a new appointment may be presumed. But the learned counsel has carefully refrained from citing any authority in support of his

proposition. It would certainly be a novelty in jurisprudence if it had been held that an appointing power can, by acquiescence, confer an office which it had no power to confer by direct appointment.

The order should be affirmed, with costs and disbursements. All concur.